Filed 10/7/25  P. v. Guerra CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MARCO ANTONIO GUERRA,<br><br>  Defendant and Appellant. | B338095<br><br>(Los Angeles County<br>Super. Ct. No. BA288019) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Stennis, Judge.  Affirmed.

Kieran D. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Marco Antonio Guerra[1] appeals from a postjudgment order denying his Penal Code former section 1170.95 (now section 1172.6)[2] petition with respect to his convictions for first degree murder and attempted willful, deliberate, and premeditated murder. Guerra contends the superior court erred in denying his petition at the prima facie stage because the jury could have convicted him based on the natural and probable consequences doctrine. We reject his contention and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Evidence at Trial*[3]

"On the evening of July 31, 2004, 16-year-old Juan Gomez went into a market owned by his parents, while his friend, 14-year-old Salvador Cruz waited outside. As Gomez was leaving the market, both he and Cruz were struck by bullets fired from a passing white Mitsubishi. Gomez died from his wounds.

"Days later, police stopped . . . Guerra, a known 18th Street Gang member. Guerra was driving a white Mitsubishi with damage and other distinctive markings matching those of the car shown in the market's surveillance video. Two other known 18th Street Gang members were with Guerra in the car. After Guerra

---

[1] The record also refers to defendant as Marcos Antonio Guerra.

[2] Statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] We derive the facts from the nonpublished opinion on Guerra's direct appeal (*People v. Guerra* (July 14, 2009, B205490) [nonpub. opn.]), relying on them for background purposes only. (See *People v. Love* (2025) 107 Cal.App.5th 1280, 1283, fn. 2.)

was arrested, he volunteered to police he was behind the wheel of the white Mitsubishi at the time of the shooting, but he claimed another gang member had forced him at gun point to drive the car.  In a later interview, Guerra again admitted to police he had been driving the car when the shooting occurred."  (*People v. Guerra* (July 14, 2009, B205490) [nonpub. opn.].)

B.     *Relevant Jury Instructions and the Prosecutor's Closing Argument*
       1.     *Instructions*
       The trial took place in 2006.  As relevant here, the trial court instructed the jury with CALCRIM Nos. 400 (aiding and abetting: general principles), 401 (aiding and abetting: intended crimes), 520 (murder with malice aforethought), 521 (murder: degrees), 600 (attempted murder), and 601 (attempted murder: deliberation and premeditation).

       Former CALCRIM No. 400 (Mar. 2005) provided:  "A person may be guilty of a crime in two ways.  One, he may have directly committed the crime.  Two, he may have aided and abetted someone else, who committed the crime.  In these instructions, I will call that other person the 'perpetrator.'  A person is equally guilty of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.  [¶]  Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

       CALCRIM No. 401 provided, in relevant part:  "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:  [¶] 1. The

3

perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

Former CALCRIM No. 520 (Mar. 2005) provided, in relevant part: "To prove that the defendant is guilty of [murder], the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life."

CALCRIM No. 521 provided, in relevant part: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the

4

consequences, decided to kill. The defendant acted with premeditation if he decided to kill before committing the act that caused death."

CALCRIM No. 600 provided, in relevant part: "To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person."

CALCRIM No. 601 provided, in relevant part: "If you find the defendant guilty of attempted murder . . . you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. [¶] The defendant and/or a principal acted willfully if he intended to kill when he acted. The defendant/principal deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant/principal premeditated if he decided to kill before acting. The attempted murder was done willfully and with deliberation and premeditation if either the defendant or a principal or both of them acted with that state of mind."

2. *Closing argument*

During closing argument, the prosecutor argued Guerra was guilty of first degree murder and attempted willful, deliberate, and premeditated murder as a direct aider and abettor. The prosecutor focused on CALCRIM No. 401, the instruction for aiding and abetting intended crimes. He argued Guerra "knew the perpetrator[s] intended to commit the crime [in that he] had to know that if he lent out his vehicle . . . what they were going to do." Guerra "intended to aid the perpetrators in

5

committing the crime . . . [by] driv[ing] them to the location where they might find rival enemies to shoot." Further, Guerra "did, in fact, aid and abet the perpetrators." As the prosecutor stated, "[W]e can infer what [Guerra said, which was:] 'Let's go. I am down for the hood. What are we waiting for? Get your guns. I will drive, you shoot, or you drive, I will take care of it.' "

The prosecutor also focused on Guerra's mental state during the commission of the offenses. As to the murder, the prosecutor argued Guerra acted with express malice, stating, "No matter who committed this murder . . . , there is no question in [my] mind there was an intent to kill. . . . [¶] There was a driver. There was a shooter. There was a vehicle involved. All those must have joined in the intent to kill, including the defendant." As to the attempted murder, the prosecutor argued that "[t]he same analysis" applied. Specifically, Guerra took a direct step toward killing another person by "driving to the location. Bringing those people to shoot. They intended to kill."

C.      *Verdicts, Sentence, and Appeal*

The jury found Guerra guilty of attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)) and first degree murder (§ 187, subd. (a)). As to both counts, the jury found true that a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1)), a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)), a principal personally and intentionally discharged a firearm, which proximately caused great bodily injury and death (§ 12022.53, subds. (d), (e)(1)), and Guerra committed the offenses for the benefit of a criminal street gang (§ 1862.22, subd. (b)(1)(A)).

The trial court sentenced Guerra to a total prison term of

50 years to life.  We affirmed the judgment.  (*People v. Guerra, supra*, B205490.)

D.      *Section 1172.6 Proceedings*

On August 17, 2023, Guerra filed, pro se, a petition for resentencing under section 1172.6 as to his murder and attempted murder convictions.  The People opposed, and Guerra, then represented by counsel, did not file any reply.  At the prima facie hearing, Guerra's counsel "submit[ed] on the People's papers."

The superior court denied the petition, finding that "[t]he verdict forms and jury instructions show as a matter of law, [the jury] was not instructed on [the] natural and probable consequences doctrine, felony murder[,] or any other theory of culpability that imputed malice to [Guerra]."

Guerra timely appealed.

## DISCUSSION

A.      *Senate Bill 1437 and Section 1172.6*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) substantially modified the law governing accomplice liability for murder.  (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)  While previously a defendant could be convicted of murder under the natural and probable consequences doctrine simply by acting as an accomplice in an offense that foreseeably resulted in the commission of a murder (even if the defendant did not share the actual killer's mens rea), SB 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder.  (See *Patton*, at p. 558; *People v. Reyes* (2023) 14 Cal.5th 981, 984 (*Reyes*).)  To convict a principal

7

of murder, section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof the principal acted with malice, except under the revised felony-murder rule in section 189, subdivision (e).[4]

To provide relief to those with existing murder convictions based on now-invalid theories, the Legislature created a path to resentencing codified in section 1172.6. (§ 1172.6, subd. (a); Stats. 2021, ch. 551, § 1; see *Patton*, *supra*, 17 Cal.5th at p. 558.) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775) clarified that, in some circumstances, the same relief available to persons convicted of murder is also available to persons convicted of attempted murder. (§ 1172.6, subd. (a); see *People v. Coley* (2022) 77 Cal.App.5th 539, 544 (*Coley*).) Under section 1172.6, a person convicted of "murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" or "attempted murder under the natural and probable consequences doctrine" may petition the superior court to vacate the convictions and be resentenced on any remaining counts if the petitioner could not now be convicted of murder or attempted murder because of the changes to sections

---

[4]     The revised felony-murder rule provides that a "participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs" can be liable for murder only if "[t]he person was the actual killer"; "[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree"; or "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(1)-(3).)

188 and 189.  (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief.  (§ 1172.6, subd. (c); *Patton*, *supra*, 17 Cal.5th at p. 559.)  If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the attempted murder or murder convictions and resentence the petitioner on any remaining counts.  (*Id*., subds. (c), (d)(1); *Patton*, at p. 558.)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' "  (*People v. Lewis* (2021) 11 Cal.5th 952, 971; accord, *Patton*, *supra*, 17 Cal.5th at p. 563.)  "[T]he court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*."  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; see *Lewis*, at p. 971.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971; see *Patton*, at p. 563; *Harden*, at p. 56 [jury instructions and verdicts "irrefutably establishe[d] as a matter of law" that defendant was ineligible for resentencing].)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Lewis*, at p. 972; accord, *Patton*, at

p. 563.)

"We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; see *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [denial at the prima facie stage "is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law," which "is a purely legal conclusion . . . we review de novo"].)

B.    *The Superior Court Did Not Err by Denying Guerra's Section 1172.6 Petition*

Guerra contends the jury instructions show that the jury was not foreclosed from returning guilty verdicts on the attempted murder and murder counts based on a theory of natural and probable consequences. We are not persuaded. The trial court instructed the jury on only two theories of liability for both attempted willful, deliberate, and premeditated murder and first degree murder: (1) direct perpetrator (CALCRIM Nos. 520-521, 600-601) and (2) direct aiding and abetting (CALCRIM Nos. 400-401). The court did not instruct the jury on the natural and probable consequences doctrine, felony murder, or any other theory under which malice is imputed to a person based solely on that person's participation in a crime. Guerra is thus ineligible for resentencing under section 1172.6 as a matter of law because the jury instructions and verdicts conclusively show that he was convicted under still-valid theories of liability.

1.    *Guerra is ineligible for resentencing on his attempted murder conviction*

Section 1172.6 relief is available only for defendants whose convictions for attempted murder could have been based on the

10

natural and probable consequences doctrine.  (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition"]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 ["[f]ollowing the passage of [SB] 775 in 2022, it is now clear that defendants . . . convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction could have been based on the natural and probable consequences doctrine"]; *Coley*, *supra*, 77 Cal.App.5th at p. 548 [section 1172.6, subdivision (a)(1), "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)  Guerra is not such a defendant because the trial court did not instruct Guerra's jury on the natural and probable consequences doctrine.  (See *Coley*, at p. 548 ["The jurors in this case were not instructed on [the natural and probable consequences] doctrine. . . .  The court was not required to grant resentencing on this [attempted murder] count."]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

Guerra argues that CALCRIM No. 601, the instruction on attempted murder with deliberation and premeditation, does not foreclose the possibility "that the jury necessarily made a finding of intentional and premeditated killing . . . without recourse to a theory of natural and probable consequences."  He specifically points to the language in the instruction that states, "The *defendant and/or a principal* acted willfully if he intended to kill when he acted.  . . .  The attempted murder was done willfully and with deliberation and premeditation *if either the defendant or*

11

*a principal or both of them* acted with that state of mind." (CALCRIM No. 601, italics added.) He contends the language in the instruction referring to "defendant or a principal" (CALCRM No. 601) "did not require a specific [intent] finding as to [Guerra] at all."

Guerra is incorrect. CALCRIM No. 601 is not an instruction on the natural and probable consequences doctrine. The California Supreme Court held in *People v. Lee* (2003) 31 Cal.4th 613 that to be guilty of attempted willful, deliberate, and premeditated murder, the only requirement is "that the *murder attempted* was willful, deliberate, and premeditated." (*Id.* at p. 621.) There is no requirement that "the attempted murderer *personally* must have acted willfully and with deliberation and premeditation." (*Id.* at p. 622.) The court in *Lee* "made clear its holding was based on direct aiding and abetting, not the natural and probable consequences doctrine." (*People v. Rodriguez* (2022) 75 Cal.App.5th 816, 824; see *Lee*, at p. 624.) Thus, *Lee* is still controlling despite SB 1437's amendments to the murder law. (*Rodriguez*, at p. 824.)

Although the jury was not required to find that Guerra *personally* premeditated and deliberated the attempted murder, to find Guerra guilty of attempted murder, the jury was required to find, and did find, that Guerra intended to kill. CALCRIM No. 600 instructed the jury it had to find that "[t]he *defendant* intended to kill" in order to convict him of attempted murder. (CALCRIM No. 600, italics added.) Guerra's jury would not have even reached the issue of deliberation and premeditation in CALCRIM No. 601 unless it first determined Guerra was guilty of attempted murder, i.e., it determined he intended to kill. The superior court thus correctly denied Guerra's petition as to his

12

attempted murder count.

2. *Guerra is ineligible for resentencing on his first degree murder conviction*

Guerra is likewise ineligible for relief as to his murder conviction because the jury instructions and verdict finding him guilty of first degree murder foreclose the possibility that the jury convicted him of murder based on any theory of imputed malice. As noted, the trial court instructed the jury on only two theories of liability for first degree murder: (1) direct perpetrator (CALCRIM Nos. 520-521) and (2) direct aiding and abetting (CALCRIM Nos. 400-401).

CALCRIM No. 401, the instruction on aiding and abetting, required the jury to find the aider and abettor "kn[ew] of the perpetrator's unlawful purpose and [that] he . . . specifically intend[ed] to, and d[id] in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." When an aiding and abetting instruction includes such language, the jury necessarily finds that the aider and abettor *shares* the perpetrator's specific intent. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [the aider and abettor shares the specific intent of the perpetrator " 'when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime" ' "].)

In any event, CALCRIM No. 521, the instruction on first degree murder, required the jury to find "[t]he defendant" harbored an "inten[t] to kill." Thus, whether the jury found Guerra guilty as the direct perpetrator or the aider and abettor, it necessarily found he harbored an intent to kill. "Because the changes in [SB] 1437 to the natural and probable consequences

13

doctrine do not apply to those who act with malice in aiding and abetting, the trial court's denial of [a defendant's] petition [is] appropriate" where the jury necessarily found that he harbored an intent to kill. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 946 (*Estrada*); see also *People v. Gentile* (2020) 10 Cal.5th 830, 848 [SB 1437 "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Lopez* (2024) 99 Cal.App.5th 1242, 1248 ["An accomplice who directly aids and abets the perpetrator in committing murder is liable for murder [following SB 1437] just as he or she was liable" before its enactment].)

Guerra points to two jury instructions that he claims permitted the jury to convict him "on a discredited theory of natural and probable consequences": former CALCRIM Nos. 520 and 400. Neither of these instructions, considered independently or combined, permitted the jury to convict Guerra on a now-invalid theory of liability.

Starting with former CALCRIM No. 520, the instruction on murder with malice aforethought, Guerra contends the instruction allowed the jury to convict him on the natural and probable consequences doctrine because it failed to tell the jury that to be guilty of implied malice murder, the danger to human life must "involve[] a high degree of probability that it would result in death." Relevant here, former CALCRIM No. 520 instructed jurors that "[t]he defendant acted with implied malice if . . . . [¶] 2. The natural consequences of the act were dangerous to human life." Guerra contends "the jury was left free to conclude that [his] driving, without more, was an act the natural and probable consequences of which were the shooting of Gomez."

14

Guerra relies exclusively on *Reyes*, *supra*, 14 Cal.5th 981, to support his argument. In *Reyes*, the defendant was convicted of second degree murder after the jury was instructed on the natural and probable consequences doctrine. (*Id*. at p. 984.) The superior court later denied his section 1172.6 petition for resentencing after an evidentiary hearing, finding that the defendant was guilty beyond a reasonable doubt of implied malice murder. (*Reyes*, at p. 984.) The California Supreme Court concluded, in relevant part, that the trial court erred in denying his petition because there was no substantial evidence to support a finding that the defendant was the direct perpetrator of the implied malice murder. (*Id*. at p. 992.) It held that "[t]o suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[ ] a high degree of probability that it will result in death." ' "[5] (*Id*. at p. 989.)

Guerra's reliance on *Reyes* is misplaced. "*Reyes*'s holding requiring a 'high degree of probability' of death applies only to implied malice murder." (*People v. Fleming* (2025) 113 Cal.App.5th 390, 396 [holding *Reyes* was inapplicable to voluntary manslaughter conviction].) Here, the jury convicted Guerra of first degree murder, not implied malice murder. As

---

[5] After the court's decision in *Reyes*, the Judicial Council modified CALCRIM No. 520 to state in relevant part: "The natural and probable consequences of the (act/ [or] failure to act) were dangerous to human life in that the (act/ [or] failure to act) *involved a high degree of probability that it would result in death.*" (CALCRIM No. 520, italics added; see *People v. Collins* (2025) 17 Cal.5th 293, 306, fn. 3.)

discussed, CALCRIM No. 521, the instruction on first degree murder, required the jury to find Guerra had the "inten[t] to kill," which, as explained in former CALCRIM No. 520, is the definition of *express* malice. (Former CALCRIM No. 520 ["The defendant acted with express malice if he unlawfully intended to kill"]; CALCRIM No. 521.) Thus, even though the jury was instructed on implied malice murder under CALCRIM No. 520, by returning a guilty verdict on first degree murder, the jury necessarily found Guerra harbored express malice. *Reyes* is thus inapplicable.

Turning to former CALCRIM No. 400, the instruction on the general principles of aiding and abetting, Guerra claims the last paragraph of the instruction allowed the jury to convict him on the natural and probable consequences doctrine. The last paragraph stated, "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." Guerra argues the jury instruction allowed the jury to convict Guerra of murder by finding he "aided and abetted . . . in some form of criminal conduct," such as "assault, threats, or disturbing the peace," "the natural and probable consequences of which was the resulting murder of Gomez." In *Estrada, supra*, 77 Cal.App.5th 941, our colleagues in Division Eight rejected the same argument. (See *id.* at pp. 946-949; accord, *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1031-1032.)

In *Estrada*, the defendant appealed from an order denying his section 1172.6 petition as to his first degree murder conviction. (*Estrada, supra*, 77 Cal.App.5th at p. 943.) The trial court instructed the jury with the same last paragraph in former

16

CALCRIM No. 400. (*Estrada*, at p. 946.) *Estrada* concluded that language was not "sufficient to find that the jury was instructed on a natural and probable consequences theory." (*Id.* at p. 947.) To reach its conclusion, *Estrada* reviewed the bench notes for the instruction, which provided that the trial court "should . . . instruct with the last . . . paragraph" "[i]f the prosecution is . . . relying on the natural and probable consequences doctrine." (Former CALCRIM No. 400, bench notes; see *Estrada*, at p. 946.) The bench notes state that if the prosecution's theory relies on the natural and probable consequences doctrine, "CALCRIM No. 402 or 403 should also be given."[6] (Former CALCRIM No. 400 bench notes; see *Estrada*, at p. 947.)

The trial court in *Estrada* did not instruct the jury on CALCRIM Nos. 402 or 403. (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.) Only CALCRIM No. 401, regarding aiding and abetting liability, was given to the jury. (*Estrada*, at p. 947.) The prosecutor also did not rely on the natural and probable consequences doctrine during closing argument. (*Id.* at pp. 948-949.) Instead, the prosecutor "argued that [the defendant] intended to commit the charged offenses." (*Id.* at p. 948.) Therefore, "given that the jury instructions, taken as a whole, required the jury to find that [the defendant] acted with intent to kill in order to find him guilty of first degree murder, even under an aider and abettor theory," the Court of Appeal did "not find that the bracketed language alone [wa]s sufficient to find that the

---

[6]     CALCRIM No. 402 instructs on the natural and probable consequences doctrine when the target and non-target offenses are charged. CALCRIM No. 403 instructs on the natural and probable consequences doctrine when only the non-target offenses are charged.

jury was instructed on a natural and probable consequences theory." (*Id*. at p. 947.)

Estrada is directly on point, and we agree with its holding. As in *Estrada*, the trial court here did not instruct the jury with CALCRIM Nos. 402 or 403. (See *Estrada*, *supra*, 77 Cal.App.5th at p. 947.) Further, the prosecutor argued Guerra was guilty as a direct aider and abettor who harbored an intent to kill. (See *id*. at p. 948.) While the last paragraph in former CALCRIM No. 400 referred to "other crimes," the only crimes charged were murder and attempted murder, and, for those crimes, the defendant had to have an "inten[t] to kill." (CALCRIM Nos. 521, 600.) Nor did the prosecutor argue at any point that Guerra intended to commit a non-charged target offense. The jury would have had no basis to believe that it could find Guerra guilty as an aider and abettor based on his commission of some unspecified non-charged offense. (See *Estrada*, at pp. 946-949; *People v. Rushing*, *supra*, 109 Cal.App.5th at pp. 1031-1032 [the last paragraph of CALCRIM No. 400 "was not a self-contained instruction on the natural and probable consequences doctrine"; although it "informed the jury of the possibility that a person may be found guilty of other crimes that occurred during the commission of the crime that he or she originally aided and abetted[,] it did not discuss the specific circumstances under which this may occur"].)[7]

---

[7] Guerra contends in one paragraph at the end of his opening brief that the absence of a pinpoint instruction on duress further demonstrates that the jury may have convicted him based on the natural and probable consequences doctrine. Guerra does not explain the connection between the defense of duress and the natural and probable consequences doctrine in his case, and we fail to see any.

Therefore, the superior court properly determined Guerra was ineligible as a matter of law for resentencing under section 1172.6.

## DISPOSITION

The order denying Guerra's petition for resentencing is affirmed.


                                        STONE, J.

We concur:


        SEGAL, Acting P. J.



        FEUER, J.